**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**RUSSELL A. WOOD,**

      **Plaintiff,**

**v.**                                   **Case No. 8:10-cv-2373-T-17AEP**

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

      **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff in this case seeks judicial review of the denial of his claims for a period of disability, disability insurance benefits, and supplemental security income. Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain any reversible error, I recommend that the decision be affirmed.

## I.

Plaintiff was forty years old when the Administrative Law Judge ("ALJ") issued his decision in this case. (Tr. 32, 141.) Plaintiff has the equivalency of a high school education and is able to read, write, and perform simple math. (Tr. 40.) He has past relevant work experience as a machine operator and a cabinet installer. (Tr. 54.) The ALJ found that Plaintiff has not engaged in substantial gainful activity since January 1, 2005, the alleged onset date of disability. (Tr. 22, Finding 2.) Administration records document earnings of

$60.00 in 2006, though these earnings do not rise to the level that is indicative of substantial gainful activity. (Tr. 22.)

On October 4, 2007, Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income alleging that he became disabled on January 1, 2005. (Tr. 20, 121-28, 145.) The claims were denied initially on February 6, 2008, and upon reconsideration on June 19, 2008. (Tr. 20, 62-69, 72-77.) Thereafter, Plaintiff filed a written request for a hearing on September 9, 2008. (Tr. 78-79.) On December 1, 2009, the ALJ held a hearing in which Plaintiff was represented by counsel and testified on his own behalf. (Tr. 38-57.) Before the ALJ were medical records outlining Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

In a decision dated January 27, 2010, the ALJ found that there exist no medical signs or laboratory findings to substantiate the existence of a medically determinable physical impairment. (Tr. 22, Finding 3.) Further, the ALJ found that Plaintiff had only one severe impairment: substance dependence within the context of ethanol dependence. (Tr. 24, Finding 4.) The ALJ stated that "it is reasonable to conclude that the above impairment caused more than minimal limitations in the claimant's ability to perform basic work-related activities when under the influence or intoxication and is thus 'severe' as defined in the regulations." (Tr. 24.) The ALJ also found that Plaintiff does not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 24, Finding 5.) After resolving reasonable doubt in

Plaintiff's favor regarding his alleged symptoms, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform medium work[1] as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c) with the following restrictions: occasional climbing, balancing, stooping, kneeling, crouching, and crawling; no climbing of ladders, scaffolds, or ropes; no exposure to unprotected heights; and no easy accessibility to alcoholic beverages. (Tr. 26, Finding 6.) Due to Plaintiff's history of substance addiction, he was also limited to occasional interaction with the public while intoxicated. (Tr. 26, Finding 6.)

Based on Plaintiff's RFC to perform medium work, the ALJ relied upon the vocational expert's ("VE") testimony to find that Plaintiff was unable to return to his past relevant work. (Tr. 30.) The VE testified that Plaintiff's past work as a machine operator required a level of heavy physical exertion and that the occupation of cabinet installation required the occasional use of a stool or ladder and stooping or bending activities on more than an occasional basis. (Tr. 30.) As such, the VE testified that Plaintiff was unable to return to these occupations. (Tr. 30.) However, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in the national economy that Plaintiff could perform. (Tr. 31, Finding 11.) Specifically, the VE testified that Plaintiff would be able to perform the following occupations:

> (1) Hand Packaging (DOT 920.587-018), which is considered medium with a specific vocational preparation of 2 or unskilled work, and of which there are approximately 2,000 jobs locally, 3,400 statewide, and greater than 150,000 jobs

---

[1] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. §§ 404.1567(c), 416.967(c).

nationwide;

(2) Stock Selecting/Store Laborer (DOT 922.687-0598), which is considered medium, unskilled work with a specific vocational preparation of 2, and of which there are approximately 1,200 jobs locally, greater than 2,800 statewide, and greater than 150,000 jobs nationwide;

(3) Machine Tending/Molding Machine Tender (DOT 556.685-066), which is considered medium with a specific vocational preparation of 2, and of which there are approximately 1,000 jobs locally, 21,000 statewide, and greater than 150,000 jobs nationwide.

(Tr. 31.)  Based on the foregoing facts, the ALJ found Plaintiff not disabled under the Social Security Act from January 1, 2005 through the date of his decision. (Tr. 32, Finding 12.)

On August 23, 2010, the Appeals Council denied Plaintiff's request for review. (Tr. 1-3.)  Plaintiff has exhausted his administrative remedies and has timely filed a civil action in this Court. (Dkt. No. 1.)  This case is now ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id*. § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*), *cert. denied*, 544 U.S. 1035 (2005). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (*citing Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).[2] Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The ALJ, in part, decided Plaintiff's claim pursuant to Regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These Regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment, but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the Regulations and are commonly referred to as "the grids." *Id.* § 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. *Id.* § 404.1569. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability, but is advisory only. *Id.* § 404.1569a.

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

**III.**

Plaintiff appears to challenge the ALJ's decision on two grounds:

(1) the ALJ erred in not discussing or considering the medical opinions of the treating psychiatrist, the examining psychologist, and the non-examining physicians; and

(2) the ALJ erred in not finding Plaintiff's affective disorder, unspecified personality disorder, and physical impairments to be severe.

For the reasons discussed herein, neither of these contentions warrants reversal.

**1. The ALJ's Treatment of Medical Opinions**

Plaintiff first argues that the ALJ erred in finding Plaintiff not disabled due to his failure to appropriately consider the medical opinions of Kevin Butler, M.D., Melissa Trimmer, Psy. D., James Levasseur, Ph.D., Martha Putney, Ph.D., and James Andriole, D.O. (Dkt. No. 17 at 7-10.)

Social Security Regulations "establish a 'hierarchy' among medical opinions that provides a framework for determining the weight afforded each medical opinion." *Belge v. Astrue*, No. 3:09-cv-529-J-JRK, 2010 WL 3824156, at *3 (M.D. Fla. Sept. 27, 2010). Under this hierarchy, "the opinions of examining physicians are generally given more weight than nonexamining physicians; treating physicians receive more weight than nontreating physicians; and specialists on issues within their areas of expertise receive more weight than nonspecialists." *Id*. (internal citations and quotations omitted).

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the

contrary. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see also* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d). Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Good cause for rejecting a treating source's opinion may be found where the treating sources's opinion was not bolstered by the evidence, the evidence supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis*, 125 F.3d at 1440); *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Where an ALJ does not give a treating physician's opinion controlling weight, the ALJ must consider the following factors in determining the weight to give that opinion: (1) the length, nature, and extent of the treating relationship; (2) the frequency of examination; (3) whether the opinion is supported by objective findings; (4) whether the opinion is consistent with the record as a whole; and (5) the specialization of the doctor. *Russ v. Astrue*, No. 3:07-cv-1213-J-MCR, 2009 WL 764516, at *9 (M.D. Fla. March 20, 2009).

Of particular import in this case, the ALJ should state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). When, however, an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand. *Caldwell v. Barnhart*, 261 Fed. Appx. 188, 190 (11th Cir. 2008).

**a) Dr. Butler**

Plaintiff contends that Dr. Butler was a treating psychiatrist and treated Plaintiff at both of his stays with Personal Enrichment Mental Health Services ("PEMHS"). Originally, Dr. Butler diagnosed Plaintiff with depression, alcohol abuse, and unspecified personality disorder. (Tr. 333.) Subsequently, he diagnosed Plaintiff with bipolar disorder, alcohol abuse, and unspecified personality disorder. (Tr. 337.)

As an initial matter, and as argued by Defendant, the record does not support that Dr. Butler was a treating psychiatrist. The regulations define a "treating source" as:

> your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you. Generally, we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s).

20 C.F.R. §§ 404.1502, 416.902. The regulations further state that a medical source who treated or evaluated the claimant only a few times or only after long intervals may be considered a treating source if the nature and frequency of the treatment or evaluation is typical for the condition. *Id.*

Here, the record shows that Dr. Butler evaluated Plaintiff on November 21, 2007, when Plaintiff was admitted to PEMHS for a few days, and on February 20, 2009 during another admission to PEMHS. (Tr. 319, 324, 333, 337-39.) The record does not show that Plaintiff returned for a follow-up evaluation or treatment from Dr. Butler on an outpatient

basis. Thus, Dr. Butler did not have an ongoing, longitudinal treating relationship with Plaintff. Because it does not appear that Dr. Butler was a treating source, his opinion was not entitled to controlling weight.

The ALJ discussed Plaintiff's admissions at PEMHS and Dr. Butler's notes. (Tr. 27.) While Plaintiff contends that the ALJ failed to indicate the weight given to Dr. Butler's opinion regarding Plaintiff's diagnoses, this argument is only partially persuasive. Although the ALJ did not explicitly state the weight given to Dr. Butler's diagnoses, it is clear from the remainder of the decision that the ALJ gave the opinion little weight. He noted that "the medical record is replete with evidence to support the conclusion that the claimant's problems sustaining employment are due to his ethanol addiction and abuse, but not from a resulting medically determinable impairment which is not objectively established." (Tr. 27.) Further, when discussing Dr. Butler's November 2007 evaluation, the ALJ specifically found that when Plaintiff was admitted for depression and obsessive thoughts, he was abusing ethanol on a daily basis. (Tr. 27.) Further, any error in not explicitly articulating the weight afforded Dr. Butler's diagnoses is harmless because a diagnosis alone is insufficient to establish that a condition caused functional limitations. *See Moore v. Barnhart*, 405 F.3d 1207, 1213 n. 6 (11th Cir. 2005) ("[T]he mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."). As argued by Defendant, because Dr. Butler did not assess any work-related limitations, even if the ALJ had accepted Dr. Butler's diagnoses, his opinion would not establish any additional limitations to contradict the ALJ's RFC finding and would not

change his decision. This Court has found harmless error where the ALJ failed to discuss even a treating physician's opinion because giving controlling weight to the opinion would not have changed the outcome. *See Parton v. Astrue*, No. 3:07-cv-63-J-TEM, 2008 WL 897094 (M.D. Fla. March 31, 2008). Further, in *Rodgers v. Astrue*, the Court expanded upon this issue:

> In *Fisher v. Bowen*, the court found no principle of administrative law or common sense requires remand in quest of a perfect opinion unless there is reason to believe the remand might lead to a different result. In *Ward v. Commissioner of Social Security*, the court held that while an error of law by the ALJ may necessitate a remand, a remand is not essential if it will amount to no more than an empty exercise.

No. 3:05-cv-543-J-TEM, 2009 WL 513757, at *4 (M.D. Fla. March 2, 2009) (internal citations omitted). Here, the Court is not convinced that Dr. Butler was a treating physician whose opinion was entitled to controlling weight. Further, his diagnoses alone clearly do not amount to functional limitations which would have changed the outcome of the ALJ's decision. The ALJ's failure to *explicitly* articulate the weight given to Dr. Butler's opinion is therefore harmless error, especially in light of his implicit rejection of the opinion throughout his decision, and certainly does not warrant remand.

**b) Dr. Trimmer**

Plaintiff contends that Dr. Trimmer was an examining psychologist and diagnosed Plaintiff with Mood Disorder Not Otherwise Specified ("Mood Disorder NOS"). (Dkt. No. 17 at 9.) He argues that the ALJ's failure to state with particularity the reasons for the weight given to Dr. Trimmer's diagnostic opinion requires reversal and remand.

In Dr. Trimmer's January 2008 evaluation, she found that Plaintiff's thought processes were coherent and goal-directed with no evidence of delusions, hallucinations, or disordered thinking. (Tr. 245.) Dr. Trimmer noted that Plaintiff was able to do counting and simple calculations. (Tr. 245.) Vocationally, she concluded that Plaintiff appeared to be capable of understanding and following simple instructions and directions, capable of performing some complex tasks independently, and capable of maintaining a fair degree of attention and concentration for tasks though may be unable to regularly attend to a routine and maintain a schedule. (Tr. 245.) The ALJ discussed Dr. Trimmer's evaluation in his decision. (Tr. 25, 27, 29.)

The ALJ noted that, "[w]hen considering the consultative mental evaluation proffered by Dr. Trimmer, some of the conclusions contained therein appeared inconsistent with the medical evidence in its entirety. In particular, the conclusion that the claimant would be unable to attend regularly to a routine, maintain a schedule, or use proper judgment is inconsistent with the medical evidence of record." (Tr. 29.) Rather, the ALJ concluded that the medical evidence supports a conclusion that without the influence of alcohol, Plaintiff would clearly be capable of performing these activities and more. (Tr. 29.) Ultimately, the ALJ found Dr. Trimmer's opinion to be "partially persuasive." (Tr. 29.)

Although the ALJ did not explicitly address Dr. Trimmer's diagnosis of Mood Disorder NOS, he clearly stated in the decision that "the medical record is replete with evidence to support the conclusion that the claimant's problems sustaining employment are due to his ethanol addiction and abuse, but not from a resulting medically determinable

impairment which is not objectively established." (Tr. 27.)  Again, any error in not addressing the diagnosis itself is harmless, as a diagnosis alone does not establish functional limitations. *See Moore*, 405 F.3d at 1213 n. 6.  As such, the ALJ's consideration of Dr. Trimmer's medical opinion does not warrant remand.

### c) Dr. Levasseur

Plaintiff contends that Dr. Levasseur was "a non-examining psychologist asked to express his opinions regarding the nature and severity of [Plaintiff's] mental impairments." (Tr. 17 at 9.)  While Plaintiff admits that the ALJ mentioned Dr. Levasseur's opinion in passing, Plaintiff argues that he "did not state with particularity any reasons for rejecting the opinion regarding [Plaintiff's] diagnosis." (Tr. 17 at 9.)

Dr. Levasseur found that Plaintiff had a Mood Disorder NOS and a substance addition disorder. (Tr. 257, 262.) In his functional capacity assessment, Dr. Levasseur found, among other things, that Plaintiff is able to understand and follow simple instructions, able to make basic work decisions, able to adapt adequately to work environments, and has moderate difficulties in maintaining social functioning, concentration, persistence, and pace. (Tr. 264, 270.)  He found that Plaintiff's reduction in concentration could limit his ability to complete complex tasks. (Tr. 270.)  The ALJ found that the mental assessment proffered by Dr. Levasseur was "somewhat persuasive." (Tr. 29.)  However, based on Plaintiff's testimony of subjective complaints of pain and limitation, the ALJ adjusted the degree of restrictions to conform with Plaintiff's testimony and subjective symptoms in an effort to afford Plaintiff every benefit of the doubt. (Tr. 29.)  As such, contrary to Plaintiff's arguments, the ALJ did

provide a reason for finding Dr. Levasseur's opinion only somewhat persuasive – inconsistency with Plaintiff's testimony and subjective symptoms. Further, any error in not specifically discussing Dr. Levasseur's diagnosis of mood disorder or his limitations was harmless. As explained previously, a diagnosis alone does not establish functional limitations. *See Moore*, 405 F.3d at 1213 n. 6. Further, Dr. Levasseur provides little to no support for his diagnosis of Mood Disorder NOS. The ALJ also noted that "the claimant admitted that he has no significant problems when he is sober . . . [and] that all of his 'troubles' were due to alcohol abuse." (Tr. 29.) As such, the ALJ impliedly rejected a diagnosis of Mood Disorder NOS as independent from Plaintiff's substance abuse.

Regarding the functional limitations, the ALJ found that Plaintiff had "no more than mild difficulties with concentration, persistence, or pace as long as he abstained from ethanol consumption." (Tr. 25.) The RFC finding included limitations in social functioning based on Plaintiff's substance abuse diagnosis by restricting Plaintiff to occasional interaction with the public while intoxicated. (Tr. 26, Finding 6.) As such, the RFC finding accounted for Dr. Levasseur's opinion that Plaintiff needed work environments of low social demand. Finally, all of the jobs identified by the VE involved unskilled work, so even if the ALJ accepted a limitation on Plaintiff's ability to complete complex tasks, this would not change the VE's testimony or, ultimately, the ALJ's decision. Thus, ordering a remand for the ALJ to specifically articulate the reasons for the weight afforded Dr. Levasseur's opinion would be "an empty exercise." *See Rodgers v. Astrue*, No. 3:05-cv-543-J-TEM, 2009 WL 513757, at *4 (M.D. Fla. March 2, 2009).

**d) Dr. Putney**

Plaintiff admits that the ALJ accepted the opinion of Dr. Putney but contends that the ALJ failed to state with any particularity the reasons for accepting Dr. Putney's opinion over the other medical opinions of record. (Dkt. No. 17 at 10.)  In June 2008, Dr. Putney opined that Plaintiff had depression in the context of alcohol dependence and substance addiction disorder (Tr. 290, 295) that resulted in no restrictions of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation (Tr. 297).  In her functional capacity assessment, Dr. Putney opined that Plaintiff had a moderate decrease in social functioning but was able to understand and remember work procedures and instructions, be cooperative and appropriate, make work decisions, adapt to a work setting with limited interpersonal responsibility, and perform moderately complex mental tasks when sober. (Tr. 285.)  Importantly, Dr. Putney concluded that Plaintiff had no work-related mental impairment. (Tr. 299.)  The ALJ found Dr. Putney's assessment "somewhat persuasive." (Tr. 29.)  However, as with Dr. Levasseur's opinion, the ALJ adjusted the recommended restrictions to conform with Plaintiff's testimony and subjective symptoms.  The RFC finding reflects Dr. Putney's assessment, including the moderate limitation in social functioning. (Tr. 26, Finding 6.)  Despite Plaintiff's arguments to the contrary, the ALJ in fact provided the weight afforded Dr. Putney's opinion and the reasons for accepting some recommended restrictions over others – namely, their level of consistency with Plaintiff's testimony, subjective complaints, and the medical evidence of record.

15

### e) Dr. Andriole

Plaintiff challenges the ALJ's failure to discuss Dr. Andriole's opinion when disagreeing with it. (Dkt. No. 17 at 10.) In June 2008, Dr. Andriole, a non-examining state agency consultant, diagnosed Plaintiff with "poly arthalgia back neck ankle" and "headaches." (Tr. 301.) He opined that Plaintiff's symptoms "appear partially credible and attributable to a medical determinable impairment that will result in some limitation of residual function." (Tr. 306.)

Although the ALJ did not explicitly discuss Dr. Andriole's opinion, he indeed makes reference to the opinion by stating that "[t]he claimant's ability to work is not affected by any physical diagnosis" and citing to Exhibit(s) 1F through 13F. (Tr. 27.) Exhibits 11F and 12F represent Dr. Andriole's medical opinions. As such, it is clear that the ALJ reviewed Dr. Andriole's medical opinion and concluded that it did not affect his finding as to Plaintiff's functional limitations or ultimate decision in this case. Further, the ALJ engaged in a lengthy analysis explaining that there is no evidence of objective findings, diagnostic testing, physician intervention, inpatient hospitalization, and/or acute medical treatment for any physically related impairment. In fact, the ALJ found that "the medical evidence of record is devoid of any medical evidence that would support a conclusion of a medically determinable physical impairment(s) at a level of severity that could reasonably preclude the claimant from engaging in sustained work activity." (Tr. 23.) This is a clear rejection of Dr. Andriole's empty reference to a medically determinable impairment. In the instant case, there are only Plaintiff's complaints of pain in the record. Pain, however, is not an impairment; pain is a

16

symptom. In the Eleventh Circuit, a claimant who alleges disability based on subjective complaints of pain must show evidence of an underlying medical condition, and either: (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition; or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Landry v. Heckler*, 782 F.2d 1551 (11th Cir. 1986). Therefore, the ALJ stated that "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities: i.e., medical signs and laboratory findings (SSR 96-4p)." (Tr. 23.) While Plaintiff contends that two chiropractors noted objective signs of a medically determinable physical impairment on examination, these doctors noted only muscle spasms which were treated with "conservative chiropractic adjustment." (Tr. 280.) Further, the ALJ noted that "[t]he claimant stated that he had not been seen by a treating physician or specialist [for his pain] and he only sought the care of a chiropractor on an 'on and off' basis." (Tr. 23.) Of import, the ALJ stated that "the claimant reported that the ongoing pain and his tension headaches were relieved by over-the-counter medications." (Tr. 23.) *See Glenn v. Astrue*, No. 8:10-cv-2026-T-30TGW, 2011 WL 5117081, at *3 (M.D. Fla. Oct. 6, 2011) (finding that only taking an over-the-counter pain reliever seriously undercuts a claim of disabling pain). After analyzing Plaintiff's subjective complaints of pain, the ALJ concluded that Plaintiff had exaggerated his symptoms and restrictions, which are not

supported by the medical signs and laboratory findings to the level of disability alleged. (Tr. 24.)

As such, substantial evidence supports the ALJ's determination that Plaintiff does not suffer from a medically determinable physical impairment. The ALJ may reject any medical opinion if the evidence supports a contrary finding. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986). Moreover, when taken alone, "the opinions of non-examining physicians do not constitute substantial evidence." *Bruner v. Commissioner of Social Security*, No. 8:08-cv-1744-T-27GJK, 2009 WL 3052291, at *25 (M.D. Fla. Sept. 23, 2009). As such, the ALJ did not err by implicitly rejecting Dr. Andriole's opinion because substantial evidence supports the ALJ's finding that Plaintiff did not suffer from a medically determinable physical impairment. *See Bruner*, 2009 WL 3052291, at *25 (report and recommendation adopted by the district court). Procedurally, although the ALJ failed to explicitly mention Dr. Andriole's medical opinion when rejecting it, the ALJ's thorough explanation of the absence of a physical impairment renders the analysis sufficient for the Court's review. The Eleventh Circuit has held that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," so long as the ALJ's decision allows the conclusion that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005.) A remand for the purpose of having the ALJ explicitly mention Dr. Andriole's name would be, as discussed previously, an empty and inefficient judicial exercise.

## 2. The ALJ's Finding Regarding Severe Impairments

Finally, Plaintiff challenges the ALJ's findings at step two of the sequential evaluation process. Plaintiff contends that the ALJ should have found that he suffers from the following severe impairments: unspecified personality disorder, affective disorder, and physical impairments. The ALJ found that Plaintiff suffers from only one severe impairment: substance dependence within the context of ethanol dependence. (Tr. 24, Finding 4.)

At step two, the Commissioner must determine whether the claimant has a severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). By its own terms, the evaluation at step two is a *de minimis* test intended to weed out the most minor of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153-154, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Augusto v. Comm'r of Soc. Sec.*, No. 6:06-cv-1889-Orl-DAB, 2008 WL 186541, at *5 (M.D. Fla. Jan. 18, 2008) ("The 'severe' impairment threshold of *step two* is a *de minimis* hurdle ... employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint.") (*quoting Lane v. Astrue*, No. 3:06-CV-445, 2008 WL 53706, at *5 (E.D. Tenn. Jan.3, 2008)). "At step two of the sequential evaluation the ALJ is required only to determine whether there is any severe impairment before proceeding with the next step in the sequential evaluation. Thus, a finding of any severe impairment is enough to satisfy the requirements of step two." *Lawson v. Astrue*, No. 5:09-cv-23-Oc-GRJ, 2009 WL 3617794, at *6 (M.D. Fla. Nov. 2, 2009).

According to Social Security Ruling 96-8p, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even

19

those that are not 'severe.'" When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir.1987); *see also McConnell v. Astrue*, No. 1:09-cv-00063-MP-WCS, 2009 WL 4405477, at *3 (N.D. Fla. Dec. 2, 2009) ("Even if there is error at step 2 . . . a remand is not needed if the error is harmless because the ALJ considered the limiting effects of the impairment at each succeeding step, along with other impairments.") (citations omitted).

Here, the ALJ has satisfied his requirement at step two by finding a severe impairment. Further, Plaintiff has not established that he had a severe physical impairment and additional severe mental impairments. In support of his argument pertaining to the personality and affective disorder, Plaintiff cites only to diagnoses from Dr. Butler and Dr. Trimmer. (Dkt. No. 17 at 11.) However, "[a] diagnosis alone is an insufficient basis for finding that an impairment is severe. The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *Sutton v. Astrue,* No. 3:09-cv-215-J-TEM, 2010 WL 3212085, at *4 (M.D. Fla. Aug. 12, 2010) (citations and internal quotations omitted). When Plaintiff was diagnosed with affective and personality disorder, he was abusing alcohol on a daily basis, which indicates that it was Plaintiff's substance abuse disorder that caused his symptoms. (Tr. 27, 330-333.)

Similarly, Plaintiff has failed to show that he suffered from a severe physical impairment. To support his allegation, he mentions Dr. Andriole's medical opinion, which opines that Plaintiff's symptoms "appear partially credible and attributable to a medical determinable impairment" (Tr. 306), and the medical findings from two chiropractors (Tr. 280). As discussed previously, however, these opinions do not carry much weight. First, Dr. Andriole does not support his finding with any objective testing such as x-rays or magnetic resonance imaging (MRIs). Further, the chiropractors noted only muscle spasms which were treated with "conservative chiropractic adjustment." (Tr. 280.) Plaintiff also reported that his pain was relieved by over-the-counter medications. (Tr. 23.) Based on these facts, the ALJ's finding that Plaintiff did not suffer from a severe physical impairment is supported by substantial evidence.

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. Accordingly, it is hereby **RECOMMENDED** that the decision be **AFFIRMED**.

**IT IS SO REPORTED** at Tampa, Florida, this 14th day of February, 2012.

ANTHONY E. PORCELLI
United States Magistrate Judge

## **NOTICE TO PARTIES**

Failure to file and serve written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date it is served on the parties shall bar an aggrieved party from a *de novo* determination by the District Court of issues covered in the report, and shall bar the party from attacking on appeal factual findings in the report accepted or adopted on appeal by the District Court except upon grounds of plain error or manifest injustice.  28 U.S.C. § 636(b)(1)(C); Local Rule 6.02; *Nettles v. Wainwright,* 677 F.2d 404 (5th Cir. 1982) *(en banc).*


Copies furnished to:

Hon. Elizabeth A. Kovachevich

Counsel of Record